**W. R. Smith, Plaintiff-Appellee, v. Ohio Oil Company, and Maurice M. Smedley, Defendants-Appellants.**

Term No. 55–O–12.

Fourth District.

March 5, 1956.

Rehearing denied May 22, 1956.

Released for publication June 4, 1956.

Wham and Wham, of Centralia, and John D. Daily, of McLeansboro, for defendants-appellants.

Leonard J. Dunn, of West Frankfort, for plaintiff-appellee.

JUSTICE SCHEINEMAN delivered the opinion of the court.

Plaintiff, W. R. Smith suffered personal injuries when his truck was run into by a truck of the Ohio Oil Company, driven by its employee, Maurice M. Smedley. In a suit against these parties, plaintiff recovered a judgment on a verdict of $50,000 and the defendants have appealed.

The collision occurred about 8:30 A. M. on a clear day. Plaintiff was driving westerly on U. S. Route 460. Smedley was driving south on a gravel road in a truck with defective brakes. Upon approaching the stop sign at U. S. 460, the brakes would not hold and he ran into the rear wheels of plaintiff's truck as it was passing the side road, resulting in an upset, and injuries to plaintiff.

Defendants contend there was no evidence of negligence on the part of Smedley, it being asserted that he did not know the brakes were defective and had no reason to expect the mechanical failure which caused the collision. Also that the plaintiff was guilty of contributory negligence; that there were prejudicial errors in the court's rulings; and that the verdict was grossly excessive.

As to evidence of defendants' negligence, the driver, Smedley, was called by plaintiff as an adverse party, and the following admissions were elicited:

This truck was not customarily driven by Smedley, but he also had the duty of maintenance and repair of the company's equipment. Another employee turned the truck over to Smedley the day before the crash, with a report of "difficulty with the brakes." Smedley

70

drove it to two garages for service, but they were too busy. He observed the brakes did not act right, the pedal went down. "At times the brakes left, the pedal went down like a leaky cylinder, seepage there." The next morning he added brake fluid, and the pedal still went down, there was no improvement in that respect. The truck was due for state inspection and he started to Carmi for that purpose, intending to stop first at a garage for brake adjustment, and the collision occurred on the way.

■ Driving a vehicle with defective brakes on the public ways is not only illegal, it is a serious menace to traffic, and when it is done with knowledge of the defect, it cannot be said that this is no evidence of negligence.

It is true that the witness said he had made stops using the foot brake. That may be possible even with defective brakes, provided that the approach to the intended stop is made with such diminished speed that the small residual pressure in the hydraulic brake system is adequate to make a stop before the pedal goes down and the pressure is lost. The reasonable inference from the testimony in this case is that Smedley approached the stop sign at a speed of about 15 miles per hour, possibly more.

■ Regardless of that, it is clear that Smedley knew the brakes were defective, there was a reasonable inference he knew the truck could not pass state inspection without this being remedied. He knew there was seepage in the lines, knew it was more serious than adding brake fluid could cure, he was on his way to a garage at the time, and certainly he knew that the vehicle was placed in his possession because the brakes were defective. The jury was justified in charging him with that knowledge, and the verdict is fully supported by competent evidence that the defendants were negligent.

71

The assertion of contributory negligence is based upon the plaintiff's admission that he was driving at a speed of about 45 miles per hour, possibly 45 to 50 with a truck which has a speed limit of 40 miles per hour by statute. Also that he did not slow down after seeing the defendant's truck, until he saw it pass the stop sign with no sign of stopping.

█ It is correct that plaintiff was not entitled to rely entirely on the preferential status of his way, and was required to use reasonable care. It is also true that this state, unlike some others, does not accept the doctrine of comparative negligence, but holds that contributory negligence bars recovery. However, this state also holds, unlike some others, that violations of laws or ordinances can only be regarded as prima facie evidence of negligence and are not negligence per se. Miller v. Burch, 254 Ill. App. 387.

This principle has been applied many times in reference to violations of traffic regulations, to such extent that many of the decisions are in abstract form. Such violations do not constitute negligence as a matter of law, and it is error for a court by instruction to suggest that such violation is regarded in law as negligence. Rasmussen v. Wiley, 312 Ill. App. 404; Burke v. Zwick, 299 Ill. App. 558; Wallace v. Yellow Cab Co., 238 Ill. App. 283; Berg v. Michell, 196 Ill. App. 509.

█ Defendants cite Beidler v. Branshaw, 200 Ill. 425, and Ritgers v. City of Gillespie, 350 Ill. App. 485 to the effect that where the facts are not in dispute the court will not hesitate to enter judgment notwithstanding the verdict if it is clear that the plaintiff was guilty of contributory negligence. These cases do not involve violations of traffic regulations, they are based on actual negligence, and furnish no authority for a court to hold that a party is guilty of negligence as a matter of law by reason of some traffic violation. Under the authorities previously cited, this court must

72

hold that the denial of motions for directed verdict and for judgment were correct.

This is not a case of a party insisting upon his right of way against a vehicle previously reaching or entering the intersection. The defendants' vehicle struck the plaintiff's toward the rear, when small braking power would have been sufficient to avert the collision, and this court finds it within the scope of the evidence that the plaintiff was not guilty of contributory negligence which was a proximate cause of the collision.

The first of the trial court's rulings under attack is that the court permitted the use of the pre-trial deposition of Smedley on cross-examination, and in ruling upon an objection, stated that the jury should determine whether it was contradictory in fact. The defense asserts that this was improper and relies upon Reilly Tar & Chemical Corp. v. Lewis, 326 Ill. App. 84. Therein the court found that the answers in the deposition were not different from the testimony on material points, that parts of the examination were a mere memory test, and that the party admitted all of his answers on material points, yet the deposition was used thereafter, which was held error.

In this case the deposition appears inconsistent with the direct testimony of Smedley, as the last witness for the defense. On direct, he related several stops he had made with the use of the foot brake. There is not a word in his direct testimony to indicate that he had ever perceived any defect in the brakes, or ever heard of any, or had any reason to doubt that the truck could pass state inspection, or any reason to expect a failure of the brakes. His deposition showed he had observed the defect, and knew the pedal went down at times and the brakes left.

The modern practice of pre-trial depositions is a salutary means of combating faulty memory, exaggeration, understatement, and false claims or defenses, and this court finds no logical reason to invent

73

rules for its curtailment. The trial court's ruling which refused to curtail cross-examination and permitted the showing of prior inconsistent statements was proper.

■■ It is not material whether the court's stated reason was correct, but, in this case we think it was an appropriate reason. The credibility of a witness is a question for the jury, and the trial judge is reluctant to indicate his opinion thereon. Yet, to rule flatly that an admitted prior statement is inconsistent with present testimony could easily be interpreted by the jury as disapproval from the bench of the veracity of the witness. Frequently, the attorneys differ as to the interpretation of statements, and we think it most unwise to hold that the judge must always interpret the language and impose his opinion on the jury, as to what the witness has said and is saying. In this case, it is clear that the objection made by the defense raised a factual question which materially affected the credibility of the witness, and in our opinion the court properly referred the question to the jury.

During the testimony of a medical witness for plaintiff, the court permitted the use of a plastic model of a human skeleton to assist the explanations. This is assigned as error on the ground that it was unnecessary to an understanding of the issues, was gruesome, and tended only to arouse emotion rather than explain anything.

■ The use of physical objects before a jury falls into two categories: 1, real evidence, which Wigmore calls "autoptive," and 2, demonstrative evidence. The tests for the proper use of either are substantially similar, i. e., the object must be relevant to some issue in the case, and it must also be actually explanatory of something which it is important for the jury to understand. If these tests are met, the courts do not seem to be greatly concerned with the question whether the object is gruesome.

74

■ Real evidence involves the production of some object which had a direct part in the incident, and includes the exhibition of injured parts of the body. The defense cites two cases of this type, Wagner v. Chicago R. I. & P. Ry. Co., 277 Ill. 114; and O'Hara v. Central Illinois Light Co., 319 Ill. App. 336. In the Wagner case, the plaintiff exhibited his foot, also a shoe worn at the time of his injury. The court found the objects had no value in explaining any fact in issue, and were used to excite the emotion of pity, rather than to explain anything. In the O'Hara case, the plaintiff exhibited burns on the arm, but had suffered additional burns on the same arm subsequent to the incident involved. As this was more confusing, than explanatory, it was disapproved.

Other cases in this class are: People v. Hobbs, 297 Ill. 399, an abortion case, where exhibit by the physician of the uterus of the victim was held a proper aid to understanding the injury; and Seltzer v. Saxton, 71 Ill. App. 229, where the physician exhibited a piece of bone and the eye he had removed from plaintiff, and this was affirmed.

These cases are cited only to show that the courts weigh the explanatory value of an object against its possible emotional effect, with no flat rule that a gruesome object car not be used.

■ Demonstrative evidence (a model, map, photograph, X-ray, etc.) is distinguished from real evidence in that it has no probative value in itself, but serves merely as a visual aid to the jury in comprehending the verbal testimony of a witness. Wigmore, Evid. Sec. 790, et seq. It is said its great value lies in the human factor of understanding better what is seen than what is heard. Wigmore favors the use of any aid modern science may provide, to the end that the jury may have the best possible understanding of matters it must decide. The limitations are: that the evidence must be relevant and the use of the

object actually explanatory. Sometimes the question of accuracy of an exhibit is pertinent, but this seems to be a phase of its explanatory function, since it may be misleading if inaccurate.

Similar views have been expressed by the courts. Reinke v. Sanitary District of Chicago, 260 Ill. 380; 20 Am. Jur. Evid. Sec. 740; 9 A.L.R.2d 1044, note. The skeleton of a human foot was held properly used by physicians in explanation of their testimony: Chicago & Alton Ry. Co. v. Walker, 217 Ill. 605. It was proper to use a model skeleton where it was of assistance to the jury: Carnine v. Tibbetts, 158 Ore. 21, 74 P.2d 974. But where its use would not aid a jury, trial court properly excluded it, Dameron v. Ansbro, 39 Cal. 289, 178 Pac. 874.

Articles by law professors and trial attorneys in various law reviews have pointed out that the very fact people learn and understand better with the eyes than with the ears makes it possible to abuse demonstrative evidence by giving a dramatic effect, or undue emphasis to some issue at the expense of others. There is obvious merit in these criticisms and the courts must be alert to eliminate such abuse. Apparently the enthusiasm of Wigmore, Greenleaf, and other writers for demonstrative evidence is shared by the courts, and the desirability of giving the jury the best possible understanding of the subject on which they are to pass seems to have outweighed other factors.

 As a result, the use of such evidence is usually left to the discretion of the trial court, and expressions of disapproval are generally based on irrelevance, or that the model, picture, etc., was misleading or not explanatory. Therefore, this court will not announce any flat rule that a skeletal model may never be used, but holds that its use must be actually explanatory of some relevant issue in the case.

76

■■ This court holds that the determination of relevancy and explanatory value of demonstrative evidence is primarily within the discretion of the trial court, but, to curtail abuses, is subject to review as to the actual use made of the object. If it appears that the exhibit was used for dramatic effect, or emotional appeal, rather than factual explanation useful to the reasoning of the jury, this should be regarded as reversible error, not because of abuse of discretion, but because actual use proved to be an abuse of the ruling.

Applying these tests to the actual use in the case at bar, it appears that the model was not used at all during the physician's testimony as to injuries he found, operations performed, methods of treatment, etc. Not until he proceeded to describe the present condition of plaintiff was the model exhibited. This involved the pelvic area, which is probably the part of the body most difficult for the average person to visualize.

In reply to questions by the court, the witness stated the model would assist his explanation, and that it was an excellent reproduction of a normal human skeleton. Permission was given to use the model. The witness then pointed to displacement of bones of the pelvis in a recent X-ray of plaintiff, and pointed to the model to illustrate normal alignment. Witness also explained the muscular arrangement and how the weight of the upper torso is transmitted to the lower extremities. He pointed out where excess strain would occur because of damaged ligaments and bone displacement, and how this would affect the ability to balance, or to stoop over. This was important as an explanation of the doctor's statement that a built up shoe would not remedy the condition.

■ From consideration of testimony of the witness, this court concludes that the explanation was relevant, legitimate and helpful, and contained nothing emotional or dramatic in character. The rulings of the court thereon were correct.

77

As to the amount of the verdict, while it is large, we find that the injuries were serious and permanent, and materially affect earning power. Defendants calculate that the actual damage in expense, loss of earnings, and loss of future earnings discounted for cash, would not exceed $10,000. Plaintiff makes a different calculation, the difference being largely accounted for by which prior year of earnings was used for comparison.

The plaintiff was a construction worker and had received wages on that scale. The continuity and intensity of employment in that field depends upon several variable conditions, so that no exact period can be taken as completely representative. He is now earning much less, but has earnings as a truck driver owning and operating his own truck, recently hauling coal. He states he can operate the truck, but if the movement of coal involves use of a shovel or wheel barrow, he must hire another man, since he cannot stoop and maintain his balance. This latter is corroborated by medical evidence. He can hardly be considered as employable at manual labor, except self-employment.

Considering the seriousness and permanence of plaintiff's injuries, past and future loss of earnings, and other factors, we find no basis to depart from the usual rule that the amount of damages is primarily a jury question. Ford v. Friel, 330 Ill. App. 136; Mueth v. Jaska, 302 Ill. App. 289. The verdict is within the reasonable scope of the evidence.

Finding no reversible error in the proceedings, the judgment is affirmed.

Judgment affirmed.

BARDENS, P. J. and CULBERTSON, J., concur.