# Illinois Official Reports

## Appellate Court

*Sharbono v. Hilborn*, 2014 IL App (3d) 120597

| | |
|---|---|
| Appellate Court Caption | LEE ANN SHARBONO, Plaintiff-Appellant, v. MARK HILBORN, M.D., Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0597 |
| Filed<br>Modified upon<br>denial of rehearing | January 21, 2014<br><br>June 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The judgment entered for defendant in a medical malpractice action alleging that defendant failed to timely diagnose plaintiff's breast cancer was reversed and the cause was remanded for a new trial on the ground that the trial court erred in permitting the defense to use a PowerPoint presentation as demonstrative evidence during defendant's testimony, since a proper foundation for the evidence was not established, the presentation was not disclosed to plaintiff in a timely manner, and the use of the exhibit went beyond trying to educate the jury on the characteristics radiologists use in evaluating breast lesions. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 06-L-199; the Hon. Joseph P. Hettel, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Anthony C. Raccuglia (argued) and James A. McPhedran, both of Anthony C. Raccuglia & Associates, P.C., of Peru, for appellant.

Brian J. Hickey (argued) and Jennifer A. Bollow, both of Cassiday Schade, LLP, of Naperville, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Schmidt dissented upon denial of rehearing, with opinion.

**OPINION**

¶ 1    Plaintiff, Lee Ann Sharbono, filed an action for medical negligence against defendant, Dr. Mark Hilborn, a board-certified radiologist, alleging that defendant had failed to timely diagnose her breast cancer. After a trial, the jury found for defendant and against plaintiff. Plaintiff filed posttrial motions for judgment notwithstanding the verdict, for new trial, and for rehearing, all of which the trial court denied. Plaintiff appeals, arguing that the trial court erred in: (1) denying her posttrial motion for judgment notwithstanding the verdict or for new trial; (2) allowing the defense to present a certain PowerPoint presentation as demonstrative evidence during defendant's testimony at trial; (3) providing the jury with an erroneous instruction on standard of care; and (4) instructing the jury on mitigation of damages. We agree with plaintiff's second assertion and find that the error was reversible error. Therefore, we reverse the trial court's judgment and remand this case for a new trial.

¶ 2                                    FACTS

¶ 3    In August 2006, plaintiff was diagnosed with breast cancer in her left breast, which had spread to the nearby lymph nodes under her left arm. Plaintiff underwent extensive treatment, including a modified radical mastectomy of her left breast, removal of several of the lymph nodes in her left underarm area, and numerous rounds of chemotherapy and radiation. Although plaintiff's cancer has been in remission now for several years, she still suffers from lymphedema in her left arm as a result of the cancer surgery and from the constant fear that her cancer will return.

¶ 4    The lawsuit in this case arose out of a diagnosis that was made by defendant in November 2004. Plaintiff, who was 39 years old at the time, initially went to see her primary care doctor, Dr. Daisy Chacko, a family physician, because she was experiencing fatigue, weight gain, and aches and pains. Dr. Chacko ordered a screening mammogram. Plaintiff had a previous mammogram done in July 1998 when she was 32 years old and lived in Texas, and, although plaintiff had what she described as hard ridges under her breasts, nothing abnormal was found in the mammogram.

¶ 5 Defendant was the radiologist who interpreted the images from the tests of plaintiff's left breast that were conducted in October and November 2004 (the November 2004 tests). In the initial screening mammogram, defendant observed an abnormality or a lesion in plaintiff's left breast that was not present in the 1998 mammogram and recommended that a diagnostic mammogram be completed. The diagnostic mammogram also showed a lesion in plaintiff's left breast, so an ultrasound was ordered. Following an evaluation of the ultrasound images, defendant ultimately concluded that the lesion in plaintiff's left breast was benign. No biopsy was ordered or recommended by defendant at that time.

¶ 6 In 2005, plaintiff went back to see Dr. Chacko, complaining of cramping in her left breast. Dr. Chacko reassured plaintiff that the 2004 mammogram showed that everything was fine and that there was nothing to worry about.

¶ 7 In May 2006, plaintiff returned to her family physician's office, complaining of cramping in her left breast and pain in her shoulder, and requested that another mammogram be done. The mammogram was not conducted, however, until August 2006, just prior to plaintiff's forty-first birthday, because of a miscommunication between the hospital and the doctor's office.

¶ 8 Defendant interpreted the August 2006 mammogram and, after evaluating the images, recommended that plaintiff obtain another ultrasound of her left breast. The ultrasound indicated that the lesion in plaintiff's left breast was likely malignant, and a biopsy was ordered. All three procedures–the mammogram, the ultrasound, and the biopsy–were done on the same day. The biopsy confirmed that plaintiff had breast cancer.

¶ 9 In December 2007, plaintiff brought the instant action against defendant and the hospital for which defendant provided services, alleging, primarily, a negligent failure to timely diagnose her breast cancer. The hospital was later dismissed from the instant action based upon a settlement with plaintiff. The complaint against defendant was amended several times over the following four years, and the case eventually proceeded to a jury trial in November 2011.

¶ 10 The evidence presented at the trial can be briefly summarized as follows. Plaintiff testified about her symptoms and her history of medical tests and procedures leading up to the cancer diagnosis, including the 1998 mammogram, the 2004 tests, and the 2006 tests; described the treatment that she received after the diagnosis of cancer was made; and explained in detail the lasting lymphedema and other complications that she experienced as a result of having to undergo the level of cancer treatment that was required. As for the results of the November 2004 tests, plaintiff stated that she was personally told by defendant that "everything was fine" and that "there was nothing there." In addition, according to plaintiff, she was not provided with any specific follow-up recommendation by defendant, other than a form letter that she later received from defendant's office or the hospital, which stated that her results did not show any suspicious abnormalities and suggested that she start obtaining annual mammograms at the age of 40, consistent with the recommendations of the American Cancer Society. Plaintiff indicated that she complied with that recommendation by going to see her doctor to schedule a mammogram when she was 40 years old. Plaintiff stated further that had she known that there was an abnormality present in the images of her left breast, she would have gotten a second opinion.

¶ 11 Dr. Michael Foley, a physician who was board-certified in diagnostic radiology, nuclear medicine, and interventional radiology, provided testimony for plaintiff on the standard of care as an expert witness. After describing his background and experience to the jury, Dr. Foley

testified about the four evaluative characteristics that were used by radiologists in evaluating images of breast lesions: margins, shadowing, axis of orientation, and internal echo consistency. Dr. Foley also described for the jury the Breast Imaging Reporting and Database System (BI-RADS), a system that was used by radiologists to classify breast images, and discussed the follow-up treatment that was dictated by each particular classification. During his testimony, Dr. Foley opined that defendant breached the standard of care in several respects as to defendant's review of the 2004 images and defendant's diagnosis in 2004 that the lesion in plaintiff's left breast was benign. Dr. Foley discussed at length the areas in which defendant breached the standard of care and explained to the jury the reasons for his opinion in that regard.

¶ 12    Dr. Gillian Maclaine Newstead, a radiologist who specialized in breast imaging and who was involved in plaintiff's cancer treatment, also testified as an expert witness for plaintiff. After describing her education and experience to the jury, Dr. Newstead was asked about a certain portion of the 2004 ultrasound images of plaintiff's left breast. Dr. Newstead stated that those images showed abnormal breast tissue, a mass, or a lesion. In Dr. Newstead's opinion, the lesion needed further evaluation, such as additional imaging or a biopsy, to determine whether it was benign or cancerous. Dr. Newstead acknowledged in her testimony, however, that she did not review all of the 2004 ultrasound images; that "abnormal" did not mean "malignant"; and that she had no opinion as to whether defendant complied with the standard of care, whether plaintiff had cancer in 2004, or whether a cancer diagnosis in 2004 would have changed plaintiff's prognosis.

¶ 13    Dr. Mark Kelley, a board-certified surgeon who specialized in surgical oncology and who was asked to review the records in this case, testified for plaintiff as an expert witness on the issues of causation and damages. After describing his education and experience for the jury, Dr. Kelley opined, based upon his review of the record, that: (1) plaintiff's lesion in the November 2004 ultrasound should have been classified as at least a BI-RADS 3 (probably benign), rather than a BI-RADS 2 (benign); (2) plaintiff had cancer in 2004; (3) plaintiff did not have lymph node involvement in 2004; (4) if plaintiff had been diagnosed with cancer in 2004, her treatment would have been less extensive–plaintiff would have received a lumpectomy or partial mastectomy, rather than a mastectomy, plaintiff would not have needed chemotherapy, plaintiff would still have needed radiation therapy but would have had fewer side effects, plaintiff's prognosis for survival would have been better, both at the time of diagnosis and at the time of trial, and plaintiff would not have been likely to develop lymphedema; (5) a modified radical mastectomy, and not a lumpectomy, was the most appropriate surgical treatment for plaintiff's cancer in 2006, regardless of whether plaintiff had chemotherapy before or after the surgery; and (6) plaintiff's prognosis for survival at the point of trial was 90% or greater, since plaintiff had not had a recurrence of cancer within the first five years. Dr. Kelley explained the reasons for his opinions to the jury. During his testimony, however, Dr. Kelley acknowledged that it was possible that if plaintiff had obtained a follow-up mammogram within a year (by November 2005), as she was allegedly told to do by defendant, plaintiff might not have had lymph node involvement at that time and that the lesion might still have been small enough for plaintiff to have a lumpectomy, although chemotherapy would have been required under those circumstances.

¶ 14 Defendant was called to give testimony as an adverse witness in plaintiff's case-in-chief and, immediately thereafter, to provide testimony in his own case-in-chief.[1] After describing his background and experience to the jury, defendant testified about his evaluation of plaintiff's 2004 images and his diagnosis in 2004 that the lesion in plaintiff's left breast was benign. Defendant ultimately opined that he did not breach the standard of care and explained to the jury the reasons for his conclusion in that regard. As part of that explanation, defendant described to the jury the four evaluative characteristics and how he interpreted those characteristics as to plaintiff's lesion. Defendant stated that based upon his evaluation of plaintiff's 2004 images using the four evaluative characteristics, he classified plaintiff's breast lesion in 2004 as benign or as a BI-RADS 2. According to defendant, with a BI-RADS 2 classification, there was a 98% chance that the lesion was benign. Defendant stated further that after the November 2004 procedures, he told plaintiff that the results were benign and specifically recommended to plaintiff that she obtain a follow-up mammogram within a year, which was the appropriate level of follow-up treatment for a BI-RADS 2 diagnosis. Defendant also reported his findings to plaintiff's primary care doctor by letter and recommended in that letter that plaintiff obtain a follow-up mammogram within a year. According to defendant, it was the responsibility of plaintiff's primary care doctor to go over the findings and recommendations with plaintiff. Defendant acknowledged, however, that a different letter was sent by his office or the hospital to plaintiff personally and that the letter that was sent to plaintiff did not specifically state that plaintiff was to obtain another mammogram within a year or indicate that there was still a possibility that the plaintiff's breast lesion was cancer.

¶ 15 During defendant's direct testimony in his own case-in-chief, the defense sought to use as demonstrative evidence a PowerPoint presentation that it had prepared. The evidence, defendant's exhibit No. 18, consisted of several screens of drawings or images that were taken from a learned treatise, along with copies of plaintiff's own images from the 2004 mammograms and ultrasound and from the 2006 ultrasound. The name of the particular treatise that was used was noted on the screen, allegedly for copyright purposes. Above the treatise images were headings such as "benign appearing lesions," "benign cyst," and "infiltrating ductal carcinoma."[2] The exhibit was allegedly being used by the defense to help the jury understand the complicated medical testimony that was being given by defendant as to the four characteristics used for evaluation of breast lesions.

¶ 16 Plaintiff objected to the use of the demonstrative exhibit for various reasons and had claimed earlier that the defense had not properly disclosed the exhibit as required by the supreme court rules. The defense asserted that it had e-mailed the presentation to plaintiff at the start of the trial as required by the trial court in its order regarding demonstrative exhibits. Plaintiff maintained that he had never received the exhibit and was unaware of the exhibit until it was being tendered during defendant's testimony in the presence of the jury. The trial court allowed defendant to utilize exhibit No. 18 over plaintiff's objections and instructed the jury briefly that during the presentation of the exhibit, the defense was going to be doing two things at once: (1) trying to teach the jury about the types of breast lesion margins; and (2)

---

[1]Defendant's testimony in his own case-in-chief was presented out of order by agreement of the parties.

[2]The capitalization has been removed from the quoted headings for the convenience of the reader.

transitioning from a known carcinoma in this case to the case itself. When the testimony resumed, defendant went through the drawings and images with the jury and explained to the jury what was significant about each image relative to the four characteristics. During the questioning of defendant, defense counsel was careful to point out when the images in the exhibit were those from the treatise, rather than plaintiff's own images, and stressed numerous times in the context of the questions that he was asking defendant that the treatise images were only being used for demonstrative purposes.

¶ 17    Dr. Michael Racenstein, a board-certified radiologist and mammographer, testified for the defense on the standard of care as an expert witness. After describing his qualifications and experience for the jury, Dr. Racenstein explained the four evaluative characteristics and the BI-RADS system. Dr. Racenstein opined that defendant did not breach the standard of care in this case and explained the reasons for his opinion in that regard to the jury. During his testimony, Dr. Racenstein acknowledged, however, that he would have classified plaintiff's lesion in 2004 as a BI-RADS 3 (probably benign), rather than a BI-RADS 2 (benign) lesion, but indicated that the classification to be assigned on the BI-RADS scale was more of a personal preference, rather than a strict rule.

¶ 18    Defendant's other expert witness, Dr. Bruce Kaden, who was board-certified in internal medicine, medical oncology, and hematology, gave testimony on the issue of causation. After describing his qualifications and experience to the jury, Dr. Kaden testified that at the time of plaintiff's cancer diagnosis in 2006, a different treatment that plaintiff could have received was to have chemotherapy first and a lumpectomy second, if necessary, after the size of the lesion had decreased. With that treatment modality, according to Dr. Kaden, plaintiff could have avoided a mastectomy. Dr. Kaden testified further that from his review of the case, he believed that plaintiff had breast cancer and lymph node involvement in 2004 and that her treatment, therefore, would have been similar, regardless of whether she was diagnosed in 2004 or 2006. Thus, according to Dr. Kaden, even if plaintiff had been diagnosed with cancer in 2004, she still would have undergone essentially the same treatment and she still would have developed lymphedema. Dr. Kaden acknowledged, however, that there was nothing in the records that indicated that plaintiff had lymph node involvement in 2004 and, that if there was no lymph node involvement when the cancer was discovered, plaintiff would have had a much smaller risk of developing lymphedema from the treatment modality that would have been required. Dr. Kaden also acknowledged that a mastectomy was the treatment modality that was recommended by plaintiff's treatment providers and that he did not disagree with that treatment recommendation or believe that it was negligent. As for plaintiff's prognosis, Dr. Kaden opined that plaintiff was completely cured of her cancer, that the cancer would not return, and that the cancer would not have a negative impact on plaintiff's life expectancy.

¶ 19    After the evidence had concluded and the attorneys had made their closing arguments, the trial court instructed the jury on the law. One of the instructions that the trial court gave the jury was Illinois Pattern Jury Instructions, Civil, No. 105.01 (2005) (hereinafter, IPI Civil (2005) No. 105.01) on the standard of care in a professional-negligence case. That instruction had been submitted by the defense. During the jury instruction conference, which had occurred earlier, plaintiff's attorney had submitted to the trial court the 2006 version of IPI Civil No. 105.01 (hereinafter, IPI Civil (2006) No. 105.01) and had commented to the court that the instruction would have to be modified to comply with the Illinois Supreme Court's decision in *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 46. The trial court rejected plaintiff's

proposed instruction and gave defendant's proposed instruction instead. The trial court also gave the jury defendant's proposed mitigation of damages instruction (Illinois Pattern Jury Instructions, Civil, No. 105.08 (2011) (hereinafter, IPI Civil (2011) No. 105.08)) over plaintiff's objection.

¶ 20    At the conclusion of deliberations, the jury returned a general verdict for defendant and against plaintiff. Plaintiff filed posttrial motions for judgment notwithstanding the verdict, for a new trial, and for rehearing, all of which the trial court denied. This appeal followed.

¶ 21                                                    ANALYSIS

¶ 22    On appeal, plaintiff raises several issues. Although not necessarily in the order raised by plaintiff, we will first address plaintiff's argument that the trial court erred in denying her posttrial motion for judgment notwithstanding the verdict or for a new trial. Plaintiff asserts that her motion should have been granted as to either one form of relief or the other because of the strength of the evidence in her favor.[3] In support of that assertion, plaintiff claims that: (1) both defendant and his attorney admitted that defendant violated the standard of care, an admission that was ignored by the jury at the trial and also by the trial court in ruling upon the posttrial motions; (2) all of the experts in this case agreed that plaintiff had an asymmetrical density in her left breast, that such a density could be evidence of cancer, and that a biopsy in 2004 would have conclusively determined whether plaintiff had cancer in her left breast at that time; (3) an asymmetrical density, such as the one plaintiff had been diagnosed with, should never have been cleared as noncancerous or benign without a biopsy having been done; and (4) despite defendant's conclusion to the contrary, the evidence in this case, including defendant's own testimony, indicated that plaintiff's lesion was "probably benign" or BI-RADS 3, rather than "benign" or BI-RADS 2, and that the appropriate recommendation, therefore, was for plaintiff to return for more testing in six months, a recommendation that defendant, by his own admission and the admission of his attorney, never made. Defendant disagrees with plaintiff's claims and assertions, or the significance of those assertions, and contends that there was ample evidence to support the jury's verdict. Thus, defendant argues that the trial court properly denied plaintiff's posttrial motion for judgment notwithstanding the verdict or for a new trial.

¶ 23    A trial court's ruling on a motion for judgment notwithstanding the verdict is subject to a *de novo* standard of review on appeal. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37. A motion for judgment notwithstanding the verdict raises a question of law and asserts that even when all of the evidence is considered in the light most favorable to the party opposing the motion, there is a total failure or lack of evidence to prove a necessary element of the opposing party's case. *Id.* The burden on the party seeking a judgment notwithstanding the verdict is a high one as the motion may be granted only under a very limited set of circumstances–when all of the evidence, viewed in the light most favorable to the party opposing the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. See *id.*; *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). In

_____

[3]Plaintiff also asserts that her motion for a new trial should have been granted because of the cumulative effect of certain procedural and evidentiary errors that were allegedly committed by the trial court during the trial of this case and pertained to such matters as the admission of evidence and jury instructions. Those errors will be specifically addressed later in this opinion.

ruling upon a motion for judgment notwithstanding the verdict, the court does not weigh the evidence or concern itself with the credibility of the witnesses and must consider the evidence, and any reasonable inferences therefrom, in the light most favorable to the opposing party. *Maple*, 151 Ill. 2d at 453. A court has no right to enter a judgment notwithstanding the verdict if the evidence demonstrates a substantial factual dispute or if the outcome of the case depends upon an assessment of credibility or a determination regarding conflicting evidence. *Id*. at 454.

¶ 24 In ruling upon a motion for new trial, on the other hand, the trial court will weigh the evidence and will set aside the jury's verdict and order a new trial only if the verdict is against the manifest weight of the evidence. *Lawlor*, 2012 IL 112530, ¶ 38. A verdict is against the manifest weight of the evidence only if it is clear from the record that the jury should have reached the opposite conclusion or if the jury's findings are unreasonable, arbitrary, and not based upon any of the evidence presented. *Id*. On appeal, the trial court's ruling on a motion for new trial will not be reversed unless the trial court committed an abuse of discretion in making its ruling. *Id*. In determining whether an abuse of discretion has occurred, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple*, 151 Ill. 2d at 455-56.

¶ 25 Having reviewed the evidence presented at the trial in the present case, we find that the trial court properly denied plaintiff's posttrial motion for judgment notwithstanding the verdict or for a new trial. Contrary to plaintiff's claim on appeal, we do not read this record as containing any admissions by defendant or his attorneys that defendant breached the standard of care in either his interpretation of plaintiff's 2004 images or in his 2004 diagnosis that the lesion in plaintiff's left breast was benign. In fact, defendant and one of his expert witnesses both specifically testified that defendant did not breach the standard of care. In addition, we find no support in the record for plaintiff's claim that an asymmetrical density should never be ruled benign without a biopsy having been done. No expert witness testified to that effect and, as with the previous claim, defendant and one of his expert witnesses specifically testified that a biopsy was not required in 2004 under the facts of this case and the applicable standard of care. Nor do we agree with plaintiff's characterization of the testimony regarding the BI-RADS classification of plaintiff's lesion. The testimony to which plaintiff refers appears to be a description in general terms as to whether the observed characteristic was an indication of a benign lesion or a malignant lesion and not a more specific description as to the appropriate BI-RADS classification. Indeed, it was very clear from defendant's testimony that when it was time to put all of the diagnostic information together and form a conclusion, defendant concluded, using his expertise, that plaintiff's lesion was benign or BI-RADS 2. The fact that defendant's expert witness, Dr. Racenstein, testified that he would have classified plaintiff's lesion in 2004 as a BI-RADS 3 lesion does not alter our conclusion but, rather, was merely another piece of information for the jury to consider.

¶ 26 Ultimately, this case involved a classic battle of expert witness testimony. The testimony of plaintiff's expert witnesses supported plaintiff's side of the case and the testimony of defendant and his expert witnesses supported defendant's side of the case. It was the jury's role to determine whether each expert witness was credible and how much weight to give to each expert's testimony. See *Maple*, 151 Ill. 2d at 452; *Walski v. Tiesenga*, 72 Ill. 2d 249, 260 (1978). Under the circumstances present in the instant case, plaintiff's motion for judgment notwithstanding the verdict or for a new trial was properly denied. See *Lawlor*, 2012 IL 112530, ¶ 37; *Maple*, 151 Ill. 2d at 455-56.

¶ 27    Next, we will address plaintiff's claim regarding defendant's use of the PowerPoint presentation, defendant's exhibit No. 18. Relevant PowerPoint presentations are commonly allowed in the trial courts, when the proper steps have been taken for their admission. Plaintiff argues that the trial court committed reversible error by allowing the defense to present exhibit No. 18 as demonstrative evidence during defendant's testimony at trial. Plaintiff asserts that the use of the exhibit was improper because: (1) the necessary foundation for the ultrasound images in the exhibit, which contained images from a learned treatise, was never established (although there was no objection to the diagrams, plaintiff did object to the use of the ultrasound images from the text); (2) such an exhibit could only be presented in cross-examination, not in direct examination, as it was in the present case; (3) the exhibit was not timely disclosed to plaintiff as required by the supreme court rules on discovery; and (4) the exhibit was not actually being used by the defense as demonstrative evidence but, rather, was being used by the defense to try to corroborate defendant's medical opinion that he correctly diagnosed plaintiff's lesion as benign from plaintiff's imaging tests. Plaintiff asserts further that the erroneous admission of exhibit No. 18 was highly prejudicial in this case and that it warrants a reversal of the trial court's judgment on the jury verdict and a remand for new trial. Defendant disagrees with plaintiff's various assertions and contends that the trial court properly exercised its discretion in ruling that exhibit No. 18 was admissible as demonstrative evidence. In the alternative, defendant contends that even if the trial court's ruling was incorrect, reversal in this case is not warranted because plaintiff cannot show that the alleged error caused substantial prejudice that affected the outcome of the trial. Defendant argues, therefore, that the trial court's judgment should be affirmed.

¶ 28    At trial, plaintiff objected to the treatise's ultrasound images in a sidebar and in a number of other occasions. Plaintiff objected to the treatise's ultrasound images because there was no information provided as to who made the diagnosis regarding the images, there was no information as to what the images indicated, and there was no information or indication as to what other images may have been shown with the images in question to allow the person who made the diagnosis to conclude that the images represented cancerous or benign cells. At one point in the trial, plaintiff renewed his objection to the ultrasound images, arguing that there was no record as to from where the images came. The trial judge indicated that he would take the objections as a standing objection, which he overruled. At another point in the trial, the trial judge noted the objections and basically asked plaintiff's attorney not to object again. A party who has objected, such as plaintiff in the instant case, is not required to repeat the same objection each time the evidence in question is offered when the attitude of the trial court as to the objection is clear. See *Spyrka v. County of Cook*, 366 Ill. App. 3d 156, 165 (2006). Contrary to the arguments by defendant in the petition for rehearing, plaintiff did object to the ultrasound images for a number of different reasons, including no record where the images came from, which was an objection to the foundation for the evidence. Defendant in the petition for rehearing made no argument regarding the lack of foundation testimony as to the treatise or as to the ultrasound images from the treatise. It is also noted that the rules of forfeiture and waiver are limitations on the parties and not on the court (see *In re Madison H.*, 215 Ill. 2d 364, 371 (2005)).

¶ 29    A trial court's ruling on the admissibility of evidence, including demonstrative evidence, will not be reversed on appeal absent an abuse of discretion. See *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 337 (2000). The

threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Leona W.*, 228 Ill. 2d at 460. If a trial court commits an abuse of discretion in the admission of evidence, a new trial should be ordered only if the trial court's ruling appears to have caused substantial prejudice affecting the outcome of the trial. See *Leona W.*, 228 Ill. 2d at 460; *Troyan v. Reyes*, 367 Ill. App. 3d 729, 732-33 (2006).

¶ 30    Physical objects that are admitted into evidence or used at trial (physical evidence) fall into one of two categories, real evidence or demonstrative evidence. *Smith v. Ohio Oil Co.*, 10 Ill. App. 2d 67, 74 (1956); see Ill. R. Evid. 401 (eff. Jan. 1, 2011). A physical object that has a direct part in the incident at issue such that it has probative value in and of itself is considered to be real evidence. *Smith*, 10 Ill. App. 2d at 74-76; Michael H. Graham, Graham's Handbook of Illinois Evidence § 401.2, at 159 (10th ed. 2010). On the other hand, a physical object that does not have a direct part in the incident at issue and is only being used to help explain or illustrate to the trier of fact the verbal testimony of a witness or other evidence is considered to be demonstrative evidence. *Id*. Demonstrative evidence has no probative value in and of itself and is merely admitted or used as a visual aid to the trier of fact. *Id*.; *Cisarik v. Palos Community Hospital*, 144 Ill. 2d 339, 341-42 (1991). The great value of demonstrative evidence "lies in the human factor of understanding better what is seen than what is heard." *Smith*, 10 Ill. App. 2d at 75. The use of demonstrative evidence, therefore, is looked upon favorably by the courts because it allows the trier of fact to have the best possible understanding of the matters before it. *Id*. at 75-76; *Schuler*, 313 Ill. App. 3d at 337. However, the same human factor that makes demonstrative evidence valuable–that people learn and understand better what they see, rather than what they hear–also makes it possible for parties to abuse the use of demonstrative evidence by giving a dramatic effect or undue or misleading emphasis to some issue, at the expense of others. *Smith*, 10 Ill. App. 2d at 76. Thus, in ruling upon the admissibility of demonstrative evidence, the trial court must be ever watchful to prevent or eliminate that abuse. See *id*. at 76-77.

¶ 31    The primary considerations in determining whether demonstrative evidence is admissible or may be used at trial are relevancy and fairness. See Ill. R. Evid. 401, 402, 403 (eff. Jan. 1, 2011); *Schuler*, 313 Ill. App. 3d at 337; *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 283-84 (2003); *Smith*, 10 Ill. App. 2d at 74-77. As for relevancy, for demonstrative evidence to be admissible, it must actually be used to illustrate or explain the verbal testimony of a witness as to a matter that is relevant in the case in question. See *id*; Graham, *supra* § 401.3, at 160. With regard to fairness, even if the relevancy test has been satisfied, demonstrative evidence may still be excluded by the trial court if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Ill. R. Evid. 403 (eff. Jan. 1, 2011); *Sherman*, 203 Ill. 2d at 284; *Cisarik*, 144 Ill. 2d at 342.

¶ 32    In addition to the above, before demonstrative evidence may be presented or admitted at trial, a proper foundation for the use of the evidence must be established. See *Sherman*, 203 Ill. 2d at 283-84; *Cisarik*, 144 Ill. 2d at 342. If the demonstrative evidence that the proponent seeks to admit is a filmed or photographed image, such as in the present case, to establish the necessary foundation, the proponent must have a witness with personal knowledge of the filmed or photographed object testify that the film or image is an accurate portrayal of what it

purports to show, unless, of course, the parties have made a stipulation to that effect. See *id*. Absent such a foundation, the demonstrative evidence may not be presented or admitted at trial. See *Sherman*, 203 Ill. 2d at 283-85.

¶ 33 Having reviewed the record in the present case, we do not believe that defendant's exhibit No. 18 was properly classified as demonstrative evidence. The use of the exhibit at trial went well beyond merely trying to teach or educate the jury about the four evaluative characteristics that radiologists use to evaluate breast lesions, a matter about which three of the expert witnesses in this case testified. Rather, it appears from the record that the treatise images and diagrams contained in exhibit No. 18 were used to help show the basis of defendant's own medical opinion in this case and to support his diagnosis in 2004 that plaintiff's lesion was benign. Our opinion in that regard is best illustrated by certain screens of the PowerPoint presentation which contained main or side headings referencing the word, "benign," such as "benign appearing lesions," "benign shadowing," or "benign appearing echoes," and on the same screens showed images from plaintiff's November 2004 tests. We see no reason why plaintiff's 2004 images were placed under or to the side of such headings, other than to try to support, and show the basis for, defendant's medical opinion that the 2004 images were correctly interpreted as benign.

¶ 34 In reaching that conclusion, we must note that even if defense exhibit No. 18 was properly classified as demonstrative, we would still have to find that the use of the treatise images from the exhibit was erroneous because defendant failed to present an adequate foundation. See *Sherman*, 203 Ill. 2d at 283-84; *Cisarik*, 144 Ill. 2d at 342. At no time in this case did defendant or any other witness testify from personal knowledge that the sample images or diagrams contained in exhibit No. 18 from the treatise accurately portrayed the diagnostic condition (benign or cancerous) that they purported to show. Thus, exhibit No. 18 could not be properly admitted or used as a demonstrative exhibit under any circumstances. See *id*.

¶ 35 The use of an exhibit with an ultrasound image from a treatise to show the basis for an expert's opinion is permissible under *Wilson v. Clark*, 84 Ill. 2d 186 (1981), and Illinois Rule of Evidence 703 (eff. Jan. 1, 2011), if a proper foundation has been established and if there has been proper disclosure.[4] In this case, however, it was never established that the learned treatise, from which the ultrasound images were taken, was a reliable authority as required under *Wilson v. Clark* and Illinois Rule of Evidence 703. See *Wilson*, 84 Ill. 2d at 192-96 (an expert may testify about facts or data upon which he or she has based his opinion if those facts or data are of the type reasonably relied upon by experts in the particular field in forming opinions on the subject, even if those facts or data are not admissible in evidence); Ill. R. Evid. 703 (eff. Jan. 1, 2011); Graham, *supra* § 703.1, at 677. Because a proper foundation was not established as provided for in *Wilson v. Clark*, it was error for the trial court to allow the defense to use exhibit No. 18 to show the bases of defendant's opinion that plaintiff's lesion was benign and not cancerous in 2004. See *id*.

¶ 36 The defendant argues that the plaintiff cannot prevail in her appeal because it cannot be shown that the evidence complained of affected the outcome of the trial (that the evidence was

---

[4]Although plaintiff asserts that defendant could not properly bring out in direct examination the bases of defendant's medical opinion, the rulings of our supreme court would seem to indicate to the contrary, albeit in cases that did not involve the use of a learned treatise. See *People v. Anderson*, 113 Ill. 2d 1, 9-12 (1986); *People v. Pasch*, 152 Ill. 2d 133, 176 (1992).

prejudicial). The defendant argues further in the petition for rehearing that the textbook images serve "to provide a classic easily recognizable example of how the drawn images of a benign or malignant tumor would appear on an ultrasound." However, without the proper foundation, the use of the conclusory images in exhibit No. 18 to show the basis of defendant's medical opinion was highly prejudicial in this case because it went right to the heart of the malpractice claim–that defendant failed to correctly interpret plaintiff's 2004 breast lesion images as malignant–and because it was not sufficiently disclosed in a timely manner as required under Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) and Rule 214 (eff. Jan. 1, 1996). When our supreme court adopted Federal Rules of Evidence 703 and 705 (Fed. R. Evid. 703, 705) in *Wilson v. Clark*, which are now incorporated into Illinois Rules of Evidence 703 and 705 (eff. Jan. 1, 2011), the supreme court noted that the burden was on the adverse party to elicit in cross-examination the facts underlying the expert's opinion. *Wilson*, 84 Ill. 2d at 194. The supreme court noted further that doing so did not place an undue burden on the cross-examining party in light of our state's extensive pretrial discovery procedure. *Id*. Nevertheless, with the burden upon the adverse party during cross-examination to elicit facts underlying the expert's opinion, it is a matter of fundamental fairness that the adverse party be given proper and timely disclosure so that it may have the opportunity to prepare for cross-examination. The importance of that requirement in cases such as this cannot be overemphasized. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 104 (1995) (cross-examination is the principal safeguard against errant expert testimony); *People v. Safford*, 392 Ill. App. 3d 212, 224 (2009) (describing cross-examination as the "truth seeking engine"); 5 John H. Wigmore, Evidence § 1367, at 32-33 (Chadbourn rev. ed. 1974) (stating that cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth" and recognizing "its efficacy as a fundamental test of truth").

¶ 37    On a number of occasions in this case, defendant, testifying as an expert, utilized the diagrams and images from the learned treatise and compared them to the plaintiff's images. Defendant described the ultrasound images during his testimony in a conclusive manner, such as a "biopsy-proven simple cyst" (exhibit No. 18-C), a "biopsy-proven one [carcinoma] from another case" (exhibit No. 18-E),[5] a "benign cyst" (exhibits No. 18-L and 18-P), a "fibroadenoma" (exhibits No. 18-Q and 18-R), and a "biopsy-proven infiltrating ductal carcinoma" (exhibit No. 18-U). Without timely disclosure, plaintiff was completely deprived of her ability to effectively cross-examine defendant as to such matters as the extent of his reliance on the treatise, whether the treatise was truly a reliable authority, whether the specific images and diagrams in question were reliable, and whether it was reasonable for defendant to rely on the treatise in this case. It might have been possible that vigorous adversarial cross-examination in this case may have impeached the importance or reliability of the treatise, its author, or the specific images and diagrams in question. However, it is not possible to know the extent of cross-examination because the lack of timely disclosure in this case deprived plaintiff of the opportunity to prepare for cross-examination and essentially deprived plaintiff of the right to cross-examine the bases of defendant's medical opinion. Given these circumstances, reversal of the trial court's judgment and remand for a new trial are required. See *Leona W.*, 228 Ill. 2d at 460; *Troyan*, 367 Ill. App. 3d at 732-33.

---

[5]The trial court noted as to exhibit No. 18-E that "we're transitioning from a known carcinoma in this case to the case itself."

¶ 38 Having determined that reversal of the trial court's judgment and remand for new trial is warranted, we need only address the two remaining issues regarding jury instructions to the extent necessary to prevent any possible error from reoccurring on retrial. In the first of those issues, plaintiff argues that the trial court committed reversible, or, at the very least, prejudicial error when it refused plaintiff's proposed instruction on the standard of care, which was based upon IPI Civil (2006) No. 105.01, and which plaintiff intended to modify to comply with the supreme court's ruling in *Studt*, after the matter had been argued before the court. The trial court rejected plaintiff's proposed instruction and gave the defendant's tendered version of IPI Civil No. 105.01, which was based upon the 2005 version of the instruction. We need not address the merits of plaintiff's claim on this issue because IPI Civil No. 105.01 has since been modified to comply with the supreme court's ruling in *Studt*. See IPI Civil (2012) No. 105.01, Comment; *Perkey v. Portes-Jarol*, 2013 IL App (2d) 120470, ¶ 73. We presume that the newest version of IPI Civil No. 105.01 will be given to the jury upon retrial.

¶ 39 As her second jury instruction issue on appeal, plaintiff argues that the trial court committed reversible, or, at the very least, prejudicial error when it instructed the jury on mitigation of damages (IPI Civil (2011) No. 105.08) over plaintiff's objection. Plaintiff asserts that such an instruction was improper and unwarranted because it was not supported by sufficient evidence in the record and that she was prejudiced by the improper instruction because it caused the jury to focus its attention onto plaintiff's own conduct–an issue that was not relevant. Defendant argues that the trial court's ruling on the mitigation of damages instruction was supported by the evidence, was proper, and should be upheld. In the alternative, defendant asserts that even if the trial court's decision to allow the instruction was erroneous, reversible error did not occur because the instruction did not result in serious prejudice to plaintiff since the jury never reached the issue of damages.

¶ 40 For a particular jury instruction to be warranted, it must be supported by some evidence in the record. *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007); *Schuler*, 313 Ill. App. 3d at 336. The determination as to which issues are raised by the evidence presented and which jury instructions should be given rests in the sound discretion of the trial court and its decisions in that regard will not be reversed on appeal absent an abuse of discretion. *Id.*; *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002); *Studt*, 2011 IL 108182, ¶ 13. The standard for determining whether an abuse of discretion has occurred in the giving of jury instructions is whether the jury instructions, taken as a whole, were sufficiently clear so as not to mislead the jury and whether the instructions fairly and correctly stated the law. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). Thus, reversal based upon the giving of a faulty jury instruction is warranted only if the faulty instruction clearly misled the jury and resulted in serious prejudice to the opposing party. *Schultz*, 201 Ill. 2d at 274.

¶ 41 After reviewing the record in the present case, we find that the mitigation of damages instruction was supported by the evidence and was, therefore, properly given. See *Heastie*, 226 Ill. 2d at 543; *Schuler*, 313 Ill. App. 3d at 336. Although evidence was presented to the contrary, defendant clearly testified that after the November 2004 tests, he told plaintiff to obtain a follow-up mammogram within a year. That same recommendation was contained in the letter that defendant sent to plaintiff's primary care physician after the November 2004 tests were completed. If the jury found that defendant's testimony in that regard was credible, it could have reasonably concluded that plaintiff had failed to follow defendant's recommendation and that plaintiff's failure in that regard may have delayed the discovery of

her cancer and her treatment after defendant's alleged medical negligence had already occurred. Because defendant's mitigation of damages instruction was supported by at least some evidence, the trial court did not abuse its discretion in giving the instruction over plaintiff's objection. See *Heastie*, 226 Ill. 2d at 543; *Schuler*, 313 Ill. App. 3d at 336; *Fisher v. Slager*, 201 Ill. App. 3d 480, 487 (1990) (mitigation of damages instruction was supported by some evidence and was appropriately given).

¶ 42                                    CONCLUSION

¶ 43    For the foregoing reasons, we reverse the judgment of the circuit court of La Salle County and remand this case for a new trial.

¶ 44    Reversed and remanded.

¶ 45            SEPARATE OPINION UPON DENIAL OF REHEARING

¶ 46    JUSTICE SCHMIDT, dissenting.

¶ 47    I write separately upon the court's denial of rehearing. I now conclude that rehearing should be allowed and the trial court should be affirmed.

¶ 48    In finding the trial court abused its discretion in admitting defendant's exhibit No. 18 as a demonstrative exhibit, the majority states "that even if defense exhibit No. 18 was properly classified as demonstrative, we would still have to find that the use of the treatise images from the exhibit was erroneous because defendant failed to present an adequate foundation." *Supra* ¶ 34. My review of the record reveals that at no point during defendant's testimony regarding exhibit No. 18 did plaintiff make an objection for lack of foundation. The plaintiff, therefore, waived that objection, and the trial court did not abuse its discretion in deeming exhibit No. 18 demonstrative. I respectfully dissent.

¶ 49    Plaintiff made a total of five objections, one of which was a standing objection during Dr. Hilborn's testimony utilizing exhibit No. 18. Plaintiff first objected to the singling out of image No. 40 of plaintiff's 2004 ultrasound. Plaintiff's counsel characterized singling out that 1 image out of a total of 47 images as misleading. The court overruled the objection. Defense counsel asked Dr. Hilborn another question regarding image No. 40, and plaintiff again objected on the ground that singling out one image was misleading. The trial court held a brief bench conference, overruled plaintiff's objection, and made it clear to the jury that image No. 40 was 1 of 47 total images from plaintiff's 2004 ultrasound.

¶ 50    Plaintiff next objected to image No. 18-E, which Dr. Hilborn explained was a biopsy-proven carcinoma from another case/patient, not Lee Ann Sharbono's. Plaintiff's counsel stated, "I have to object on the basis that that, again, is a single image taken from another case. We don't have any idea as to what the other images may have shown in that ultrasound and what other images may have caused a conclusion that this particular image is cancerous." The trial court overruled that objection.

¶ 51    Later, Dr. Hilborn testified that image No. 18-I was an infiltrating ductal carcinoma also from another case. Plaintiff's counsel again objected, stating "I'm going to have to object to any imaging not of Mrs. Sharbono, that we have no way of cross-examining, looking at the other images to see what they present." The trial court took that objection as a standing

objection to any of the demonstrative films or images that were not plaintiff's and allowed defense counsel to continue.

¶ 52    Finally, plaintiff's counsel renewed several objections, arguing that it was "inappropriate to bring in someone else's records and reports and argue those reports as part of the case." Counsel also stated that the exhibit was hearsay, arguing that it was not a graphic, but rather, a diagnosis and that they could not know who made the diagnosis. Counsel argued, "[t]here was no record shown that these were Dr. Hilborn's patients or whether they came from other locations. Therefore we had no opportunity to cross-examine anybody who concluded that these were either benign, that they were inferior margins, or that they were irregular margins, or that they were hyperechoic."

¶ 53    None of these constitute a specific foundational objection to exhibit No. 18. "[A]n objecting party must identify the same basis for his objection in the trial court that he will argue on appeal." *York v. El-Ganzouri*, 353 Ill. App. 3d 1, 18 (2004) (citing *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1079 (1994) ("when an objection is made, specific grounds must be stated and other grounds not stated are waived on review")). The majority finds that plaintiff's objection, including "no record where the images came from," was an objection to the foundation for the evidence. That is not the case.

¶ 54    Furthermore, when the majority states that rules of forfeiture and waiver are limitations on the parties and not on the courts (see *In re Madison H.*, 215 Ill. 2d 364, 371 (2005)), it appears it concedes that plaintiff did not make a foundational objection, but is choosing to overlook that forfeiture. While some cases say that forfeiture is a limitation on the parties and not the courts, it does not necessarily confer upon this court the authority to accept or reject forfeiture arguments willy nilly in order to achieve our own desired results. In *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 437 (2008), our supreme court affirmed the appellate court's decision rejecting defendant's argument that plaintiff forfeited consideration of certain issues in her medical malpractice action, stating the oft-cited proposition that "forfeiture is a limitation on the parties and not the court." *Id.* However, the court went on to state:

> "Our decision to overlook any forfeiture in this case is made with the recognition that the new issues plaintiff raised were all issues of law which involved no problem of proofs, and that defendants were not deprived of an opportunity to present argument on these issues in the circuit court. [Citation.]" *Id*. at 439.

¶ 55    The *O'Casek* court also noted that the law within the Fourth District on the issues plaintiff raised on reconsideration was confused and the potential existed for conflict among the appellate districts. *Id*. at 438. That is not the situation that confronted the majority here. "[W]here the ground for the objection is of a character that can be remedied such as a lack of proper foundation, the objecting party must make the objection in order to allow an opportunity to correct it." *Bafia v. City International Trucks, Inc.*, 258 Ill. App. 3d 4, 8 (1994) (citing *Central Steel & Wire Co. v. Coating Research Corp.*, 53 Ill. App. 3d 943, 945-46 (1977)). Plaintiff failed to do so. Even in criminal cases where a forfeited claim may be considered under plain-error analysis, the path is narrow and the defendant has the burden of proving that the underlying forfeiture should be excused. See *People v. Johnson*, 238 Ill. 2d 478, 485 (2010) (reversing appellate court's decision, holding there was no basis to excuse forfeiture of claim under plain error). It is not the function of this court to give counsel a "pass" for objections he or she failed to make during the course of a civil trial, particularly in light of

- 15 -

the stringent requirements in criminal cases and the type of objection argued here. Plaintiff should not be awarded a new trial for a foundational objection that defendant did not have the opportunity to correct.

¶ 56 The argument that plaintiff's counsel had no way of cross-examining those images is similarly not a foundational objection. The images admittedly came from a treatise; cross-examination would have been impossible regardless. In reality, counsel's argument about the inability to cross-examine the images is just couching the argument that defendant did not properly disclose exhibit No. 18 in slightly different terms. The majority ignores the fact that after hearing argument on the subject, the trial court found that defendant had timely disclosed the exhibit.

¶ 57 As a brief aside, I find that plaintiff did have the opportunity to cross-examine or call into question those images in exhibit No. 18 that were not Lee Ann Sharbono's. Plaintiff called Dr. Hilborn first as an adverse witness. Dr. Hilborn then presented his own testimony for his case-in-chief, as agreed to by the parties. Following Dr. Hilborn's testimony, plaintiff had the opportunity to rebut that testimony and the images of that exhibit with her own expert witness testimony. Dr. Foley, a board-certified physician in diagnostic radiology, could have easily reviewed those images used in exhibit No. 18 and opined whether or not he believed they showed an infiltrating ductal carcinoma, or benign lesion, *et cetera*. The same could be said for Dr. Newstead, also an expert witness for the plaintiff who specialized in breast imaging. Any question about the reliability of the treatise images could have been dispelled by plaintiff's expert witnesses.

¶ 58 The images were demonstrative, to show what it is that radiologists look for when reading films. It is difficult to imagine that at least one of plaintiff's two experts could not have called defendant out had the images not reflected what defendant said they did. In fact, even in posttrial matters and on appeal, plaintiff makes no representation that the images displayed anything other than that represented by defendant. Where is the prejudice? They will presumably come in at the new trial.

¶ 59 Plaintiff waived any foundational objection to exhibit No. 18 and a new trial is not warranted. The trial court did not abuse its discretion in finding exhibit No. 18 demonstrative. In overruling plaintiff's various, nonfoundational objections to the exhibit, the trial court specifically stated that, "I believe the photos show that they are the four characteristics–absence of or the presence of. I don't believe it was confusing to the jury and I think we made the appropriate instructions, or the jury was appropriately instructed *** about teaching what these characteristics were." Discretion lies with the circuit court in determining whether a party may present demonstrative evidence to clarify an expert's testimony. *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 337 (2000). I do not believe that it can be said that no reasonable person would take the view adopted by the trial court in this instance.

¶ 60 The exhibit effectively allowed Dr. Hilborn to explain to the jury what characteristics he looks for when reviewing mammogram films and ultrasounds, a task that would be considerably more difficult without the assistance of those images. See *Schuler*, 313 Ill. App 3d at 337-38 (finding the trial court did not abuse its discretion in permitting defendant's use of a risk stratification chart as demonstrative evidence, where both plaintiff's and defendant's expert witnesses acknowledged that such risk stratification protocols were commonly accepted in the medical community and that the chart was simply a visual aid used to explain the risk stratification process, a concept the witnesses would testify about with or without the exhibit).

The fact that plaintiff's images were shown as a comparison does not serve to undermine the demonstrative nature of the exhibit, particularly when plaintiff's experts had the opportunity to view those images and rebut Dr. Hilborn's testimony. Furthermore, plaintiff does not even allege on appeal that the images were misleading in the respect that they did not show what defendant said they did. Plaintiff was simply not unfairly prejudiced by the demonstrative evidence. There is no reason to suspect a retrial will yield a different result.