7 July 2000

No. 3--98-0877

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

_________________________________________________________________

BONITA L. WELCH,                ) Petition for Review of an Order

                                ) of the Designee of the Chief

     Petitioner-Appellant,      ) Legal Counsel of the Department

                           ) of Human Rights.

                                )      

V.                              ) Charge No. 1998SA0128

)

DEBORAH S. HOEH, Designee of    ) 

the Chief Legal Counsel of the  )                     

Department of Human Rights;     ) 

THE DEPARTMENT OF HUMAN RIGHTS; ) 

THE APPELLATE COURT OF ILLINOIS,)

THIRD JUDICIAL DISTRICT; and  )

THE SUPREME COURT OF ILLINOIS,  )

                        )

     Respondents-Appellees.     )   _________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Bonita L. Welch, appeals the final order of the Department of Human Rights (the Department) dismissing her charge of discrimination.  We affirm.

The following uncontroverted facts are taken from the record.  Prior to 1994, Welch was employed by the Illinois Appellate Court, Third District, as a law clerk to the former Justice Tobias G. Barry.  On February 16, 1994, Welch began employment with the Illinois Appellate Court, Third District, as a staff attorney, at a salary of $39,464.  On February 23, 1994, Welch was notified that Justice Heiple determined that all entry-level staff attorneys should start at the minimum salary.  Thus, Welch's salary was reduced to $32,571, retroactive to her start date. 

THE FIRST CHARGE

On August 12, 1994, while still employed as a staff attorney, Welch filed her first charge (No. 1997CA1141) with the Department of Human Rights, alleging that Justice Heiple ordered her salary lowered because she had worked for Justice Tobias G. Barry, Heiple's political opponent.  Welch also alleged that the Illinois Supreme Court and the Illinois Appellate Court, Third District, discriminated against her based on her age and sex. 

THE SECOND CHARGE

On August 18, 1997, Welch filed a second charge with the Department (No. 1998SA0128).  However, this charge was not signed or notarized as required by section 2520.330 of the Illinois Administrative Code (56 Ill. Adm. Code §2520.330 (1996)) to perfect a charge.  See 56 Ill. Adm. Code §2520.350 (1996).

On September 8, 1997, Welch filed a signed and notarized second charge along with an additional page prepared by Welch.  The charge named the Illinois Supreme Court and the Illinois Appellate Court, Third District, as respondents.  In this second charge, Welch made three claims.  In claim one Welch alleged that she was "[s]ubject to retaliatory hostile workplace up to Feb. 24, 1997."  In support of this claim Welch alleged that after she filed her first charge against the respondents she "began to incur an environment of hostility within [her] place of employment" and that this occurred "within such a time period as to raise the inference of retaliatory motivation."

In Welch's second claim, she alleged that she was "[s]ubject to work environment of retaliatory isolation up to Feb. 24, 1997."  In support of this claim, Welch alleged that after she filed her first charge against the respondents she "was subject to isolation which [was] constructed by [the] respondents" and that this occurred "within such a time period as to raise the inference of retaliatory motivation."  In support of this second claim, Welch alleged that between November 25, 1996, and February 24, 1997, Justice William E. Holdridge discussed settling her first charge with her and asked her not to discuss the charges with anyone else.  As a result of a study of the salaries of other staff attorneys, Holdridge offered to adjust Welch's salary to that of the staff attorneys for the Appellate Court, Fourth District, retroactive to July 1, 1996.  Welch accepted Holdridge's offer on February 18, 1997, but on February 24, 1997, Welch told Holdridge that she would not withdraw her first charge.  In response, Holdridge immediately retracted Welch's salary increase and reset Welch's salary to the rate in effect prior to February 16, 1997.  Holdridge also abandoned his efforts to adjust the salary of at least one other staff attorney.

In Welch's third claim, she alleged that she was "[s]ubject to salary retraction on or about Feb. 24, 1997."  In support of this claim, Welch alleged that after she filed her first charge against the respondents she "was offered a salary adjustment which was contingent upon an overall settlement of the charges before the Il. Dept. of Human Rights" and that she declined the offer.  She further alleged that the offer was retracted because she had filed the first charge and refused to withdraw it.  Welch alleged that the salary retraction was, therefore, retaliatory. 

On September 7, 1997, the day before Welch filed her signed and notarized second charge, she wrote a letter to the Department expressing concerns regarding how the second charge had been drafted.  Welch wrote, in pertinent part:

"My concern is that Part I alleges a hostile workplace 'up to' February, 24, 1997.  Since the charge was not served on respondents until more than 180 days after February 24, 1997, this charge might be time-barred.  Also, there might have been some misunderstanding of the allegations *** since there was no hostility apparent in the research department prior to February 24, 1997.  

Also, with respect to the isolation charge (Part II), the period that we are referring to, I believe, is November 25, 1996, to February 24, 1997, during which I was pledged to tell anyone who asked about the charges that 'it was all over.'  In all other respects, I cannot honestly state that the work environment caused me to feel isolated.  Also, Part II may be time-barred as well since, standing alone, it appears to allege conduct outside the 180-day period.

Although I had originally envisioned a single charge of retaliation incorporating elements of three forms of retaliation, it now appears that the only truly viable charge is Part III, which clearly alleges an act of retaliation committed within the 180-day period."

On November 10, 1997, Welch filed another charge, labeling it as a "technical amendment."  This amended second charge was essentially the same as the original second charge except that it did not allege a hostile work environment.  The amended second charge was notarized and signed by Welch "swear[ing] and affirm[ing] that [she] read the above charge and that it is true to the best of [her] knowledge, information and belief."  Both the original and amended second charges were labeled with the same charge number, 1998SA0128.

In response to Welch's amended second charge, the Department conducted an investigation which included a fact-finding conference held on June 12, 1997, and a review of four documents.  Six witnesses participated in the conference.  Welch, Justice Holdridge, Nathan Maddox, assistant director of the Administrative Office of Illinois Courts (AOIC), and Jerry Ursini, research director for the Appellate Court, Third District (Third District), were all present at the conference.  Justice Michael P. McCuskey and Kathy Gazda, payroll officer for the AOIC, were interviewed by telephone during the conference.  The exhibits consisted of two newspaper articles about Welch's charges, the September 7, 1997, letter Welch sent to the Department, and a payroll reversal notice indicating that Welch had "received a salary increase and adjustment for her 02/16 - 02/28/97 pay  warrant" but that subsequently Welch's "direct deposit was stopped and a supplemental pay was processed with her original salary."

On August 29, 1997, after its investigation, the Department issued a report that found the following facts.  Welch filed her first charge on November 22, 1996.  Eight days later, on November 30, 1996, the respondents offered Welch a lump-sum payment and salary increase as a settlement offer and, according to Welch, asked her not to speak with anyone about the matter.  On February 18, 1997, Holdridge repeated the settlement offer and again asked Welch not to speak with anyone about the charge.  The lump-sum payment was supposed to represent the difference between Welch's present salary and her proposed salary increase, retroactive to July 1, 1996.  The respondents then processed Welch's salary increase through the payroll department.  On February 24, 1997, Welch rejected the respondents' offer and told the respondents that she would not withdraw her first charge.  As a result, the respondents rescinded Welch's salary increase.  According to Welch, she read a newspaper article on April 23, 1997, and felt that Holdridge had " 'led her down the path' " and that he had denied in the article that the salary increase offer was a settlement offer.  Welch told a Department staff member that "her only feelings of harassment or isolation relating to her alleged harm of retaliatory hostile workplace was when her other charge was filed and [J]udge Holdridge asked her not to discuss it with anyone."

The Department found that Welch's claim of retaliatory isolation was not timely filed.  Welch claimed that she was subjected to a hostile work environment on November 30, 1996, and February 18, 1997, when the respondents asked her not to discuss the matter with anyone.  Welch filed her original charge on August 18, 1997, that is, 261 and 181 days, respectively, after the alleged violations.  Regarding Welch's claim of retaliatory salary retraction, the Department found that the respondent rescinded the salary adjustment offer because Welch refused the settlement offer and Welch failed to show that the respondents' actions were pretextual.  Therefore, there was a lack of substantial evidence to support this claim.  On June 22, 1998, the Director of the Department issued a notice of dismissal concluding, based on the Department's report, that Welch's second charge lacked jurisdiction and substantial evidence. 

On July 24, 1998, Welch filed a request for review with the Department, alleging that her second charge, consisting of the retaliatory isolation and salary reduction claims, should not have been dismissed because the investigation report was "[b]ased on an incomplete, inaccurate and biased investigation" and the findings were "contrary to the evidence presented by [Welch] and available to the Department upon reasonable investigation."  Welch attached a statement containing the following alleged facts, not specifically contained in the Department's dismissal, which would have been discovered during "a reasonable investigation of the case."  Holdridge based the November 1996 salary increase offer on a salary chart provided by Welch.  In January 1997, Heiple appointed Holdridge to the position of Director of the AOIC.  Holdridge's request for a back-paycheck for Welch was denied by Joseph Schillaci, the payroll officer.  After Holdridge repeated the salary increase offer, he "secretly ceased good faith negotiations with her."  Holdridge did not tell Welch about a conversation he had with Jerry Ursini, the research director, about increasing the salaries of all of the Third District staff attorneys in response to a study that revealed that the Third District staff attorneys were being paid less than staff attorneys in other districts.  On February 18, 1997, Holdridge told Welch the best he could do was to give Welch a salary increase retroactive to July 1, 1996, and cost of living adjustments.

In her request for review, Welch explained that she declined this offer because "the unusual and secretive manner" in which it was handled made her "queasy" about accepting it and Holdridge refused to sign any documentation regarding this agreement.  According to Welch, Holdridge had no authority to settle her case, and his February 18 offer was not a settlement offer but a salary increase that was part of an effort to increase the entire research staff's salaries.  Welch alleged that the offer was  a "scheme or trick" to get Welch to give up her rights and that it was a "sham deal concocted by Justices Heiple and Holdridge" to "sweep [Welch's] discrimination charges under the carpet" and get her to withdraw her first charge by making her believe that a salary increase was a settlement offer.  Welch asserted that, when she rejected Holdridge's offer, the respondents retaliated against her by withdrawing the salary increase.  Further, according to Welch, the Department "participated in [the] unsavory attempt to cover up and deny the truth about Justice Heiple's and Justice Holdridge's abuses" by dismissing Welch's second charge.  Welch alleged that the day after the offer was withdrawn Holdridge told a newspaper reporter that the salary adjustments for the other staff attorneys were withdrawn because Welch refused to accept Holdridge's deal.  Supported by a newspaper article, Welch also alleged that Holdridge denied that there was a connection between the February 18 salary increase offer and Welch's discrimination charges.

Welch also alleged in her request for review that on February 25 or 26, 1997, after reading a newspaper article about the issue, her supervisor, Jerry Ursini, "chastised [Welch] in her office for 'being greedy' and ruining the deal for the other staff members."  Welch also claimed that, on August 6, 1997, she requested the Department to amend her second charge but that a Department investigations supervisor told Welch that her proposed amendment was "moot" or would have to be prepared as a separate charge.  Thus, Welch prepared her "technical amendment" and returned it to the Department on August 18, 1997.

Welch also attached two newspaper articles that already had been submitted to the Department, a survey of staff attorneys' salaries, and four letters.  The first letter, dated December 1, 1996, from Welch to Justice Holdridge, contained Welch's salary history.  The second letter, dated August 18, 1997, from Welch to the Department, asked the Department to "shepherd" her second charge and stated that her second charge was related to her first charge.  The third letter, dated February 18, 1997, from the Department to Welch, contained a voluntary withdrawal request form for the dismissal of the first charge.  The fourth letter, dated February 23, 1997, from Welch to the Department, declined the salary offer and thanked Holdridge for his "good faith" efforts to mediate the dispute. 

On October 9, 1998, the Department issued a final order sustaining the dismissal of Welch's second charge.  The order stated that it was issued by the chief legal counsel's designee, Deborah S. Hoeh, supervising attorney for the Department.  Hoeh sustained the findings and conclusions of the dismissal order and stated that Welch's request for review did nothing more than restate "her original position and [did] not offer any new or additional evidence to support her allegations of discrimination."  Welch filed this timely appeal. 

On appeal, Welch argues that the order sustaining the Department's dismissal was invalid because Hoeh, a mere designee of the chief legal counsel, did not have the authority to issue the final order.

The Illinois Human Rights Act (775 ILCS 5/1–101 
et seq.
 (West 1996)) provides in pertinent part:

"(A) Jurisdiction.  The Chief Legal Counsel of the Department shall have jurisdiction to hear and determine requests for review of (1) decisions of the Director to dismiss a charge[.] ***

(B) Review.  When a request for review is properly filed, the Chief Legal Counsel of the Department may consider the Director's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Director in response to the request.  In his or her discretion, the Chief Legal Counsel of the Department may designate a staff attorney to conduct an investigation into the factual basis of the matter at issue."  775 ILCS 5/7--101.1 (West 1996).

Thus, the Act provides that the chief legal counsel has jurisdiction to hear and determine requests for review.   The Act does not define "chief legal counsel."  However, the Department in its regulations defines "Chief Legal Counsel" as, 
inter alia
, "a duly authorized designee."   56 Ill. Adm. Code §2520.10 (1996).  A Department regulation is presumed to be valid unless it is inconsistent with the Act (see 775 ILCS 5/7--101(A)(West 1996)) or is unreasonable, arbitrary, or capricious.  See 
Board of Trustees of the University of Illinois v. Illinois Education Labor Relations Board
, 274 Ill. App. 3d 145, 148 (1995). 

In this case, nothing in the Act prohibited a designee from acting on behalf of the chief legal counsel, and such a prohibition may make it onerous for the Department to operate in the manner intended by the legislature.  It is common practice for an agency official to delegate specific responsibilities to a subordinate. 
Springwood Associates v. Lumpkin
, 239 Ill. App. 3d 771, 784 (1992).  Moreover, the appellate court has interpreted "Director" to refer to the named director of a department or his designee.  See 
Hoardwood, Inc. v. Department of Public Aid
, 175 Ill. App. 3d 432, 436 (1988).  Similarly, we determine that Hoeh, as the chief legal counsel’s designee, had either the express or implied authority to sustain the Department’s dismissal of Welch's second charge.  See 
Springwood Associates
, 239 Ill. App. 3d at 784.
  Further, even if Hoeh did not have the authority to enter the order, the Department’s chief legal counsel subsequently adopted and ratified the order here on appeal.  Therefore, Welch’s argument regarding Hoeh’s lack of authority is, essentially, moot.       

Next, Welch argues that the Department’s decision to dismiss her second charge was erroneous.  We disagree.

Although Welch urges this court to review the decision to dismiss her claim 
de novo
, it is well settled that a decision to sustain the dismissal of a human rights violation charge will not be disturbed absent an abuse of discretion.  
Folbert v. Department of Human Rights
, 303 Ill. App. 3d 13, 25 (1999).  Therefore, we may not reweigh the evidence or substitute our judgment for that of the Department.  
Folbert
, 303 Ill. App. 3d at 25.  Our review is limited to deciding whether the chief legal counsel's designee's decision dismissing the claim for lack of substantial evidence is "arbitrary and capricious or an abuse of discretion."  
Anderson v. Modern Metal Products
, 305 Ill. App. 3d 91, 95 (1999).

To justify the filing of a complaint with the Human Rights Commission, a petitioner must show substantial evidence of a violation (775 ILCS 5/7A--102(D(2) (West 1996)), that is, evidence that "a reasonable mind might accept as adequate to support a conclusion."  
Stone v. Department of Human Rights
, 299 Ill. App. 3d 306, 315 (1998).  A 
prima facie
 case of retaliation is established by showing that (1) the petitioner engaged in a protected activity; (2) the employer committed an adverse act against the petitioner; and (3) a causal connection existed between the protected activity and the adverse act.  
Stone
, 299 Ill. App. 3d at 316.

In the case at bar, Welch failed to establish the third element of retaliation.  There is nothing in the record to indicate that the salary increase offer was rescinded for any reason other than it was part of a settlement offer that was not accepted by Welch.  A settlement offer has certain elements such as a 
quid pro quo
.  In this case, the salary increase was the 
quid
 and the dismissal of Welch's first charge was the 
quo
.  Since Welch did not agree to dismiss her first charge, her employer withdrew its salary increase offer.  Apparently Welch takes the position that because she refused to dismiss her first charge she was punished by not getting a salary increase.  The problem with this argument is that the salary increase was the basis of her first charge.  Even when viewed in a light most favorable to Welch, her argument is, essentially, a paradox.  Thus, the Department did not abuse its discretion by finding that the petitioner failed to show substantial evidence of retaliatory conduct regarding the withdrawal of the salary increase offer. 

Further, regarding Welch's claim of retaliatory isolation, it is undisputed that her charge was not filed within the required 180-day time period and, thus, was properly dismissed.  775 ILCS 5/7A--102(A)(1) (West 1996). Welch claimed that her isolation was caused by Holdridge, who told her on November 30, 1996, and on February 18, 1997, not to speak with anyone about the matter.  However, she did not file her second charge until August 18, 1997, 181 days after the date of the alleged violation.  Welch acknowledged that her retaliatory isolation charge was time-barred in her September 7, 1997, letter to the Department.  Thus, the Department properly dismissed Welch's claim of retaliatory isolation.  Accordingly, the Department did not abuse its discretion by sustaining the dismissal of Welch's second charge.  We note that the outcome of our review would not be different had we reviewed the issues 
de novo
.

Next, Welch argues that the Department deprived her of due process of law by failing to investigate the factual basis of her request for review.  The Act requires the Department to conduct an investigation of the allegations contained in a complainant's charge, including a fact-finding conference.  775 ILCS 5/7A--102 (West 1996).  However, contrary to Welch's argument, nothing in the Act requires a second investigation when a complainant files a request for review.  Rather, regarding a request for review, the Act provides, "
In his or her discretion
, the Chief Legal Counsel of the Department 
may
 designate a staff attorney to conduct an investigation into the factual basis of the matter at issue."  (Emphasis added.)  775 ILCS 5/7--101.1(B) (West 1996).  In the case at bar, the Department had already investigated Welch's second charge by conducting a fact-finding conference consisting of six witnesses, including Welch, and reviewing four documents submitted by Welch.  Further, Welch's request for review offered no new evidence or information.  Thus, the Department did not violate section 7--101.1(B) of the Code by failing to investigate the factual basis of Welch's request for review.

Further, regarding the Department's failure to allow her to amend her first and second charges, Welch failed to establish that the amendments would have changed the outcome of this case.  Although she might have been able to overcome the time bar to her retaliatory isolation claim, Welch did not allege facts to substantively support the claim.  Welch did not allege facts to establish that Holdridge's request that Welch not speak to anyone about the settlement offer was retaliatory and not merely part of the settlement process.  Thus, Welch's due process arguments fail.

We note that we grant Welch's motion to file additional authority, 
Cooper v. Salazar
, 196 F.3d 809 (7th Cir. 1999).  However, 
Cooper
 is not controlling here because, unlike Welch, the claimants in 
Cooper
 attacked the Act on its face and attacked procedures different from those raised here.
 

The judgment of the Department of Human Rights is affirmed.

Affirmed.

BOWMAN, P.J., and GEIGER, J., concur.