**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190458-U

Order filed December 18, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| ISAIAH CRAWFORD, SR., | ) | Petition for Direct Administrative |
| | ) | Review of a Decision of the Illinois |
| Petitioner-Appellant, | ) | Human Rights Commission |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | Appeal No. 3-19-0458 |
| RIGHTS, ILLINOIS HUMAN RIGHTS | ) | Charge No. 16-SP-2083 |
| COMMISSION and DURHAM | ) | ALS No. 17-0155 |
| REMODELING AND REPAIR, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*:  The Illinois Human Rights Commission properly upheld the dismissal of all claims filed against Durham Remodeling and Repair, Inc. based on purported violations of the Illinois Human Rights Act.

¶ 2  Isaiah Crawford, Sr. requested the Illinois Human Rights Commission (Commission) to review the decision of the Illinois Department of Human Rights (Department) that resulted in the dismissal of all counts of Crawford's discrimination and retaliation charges against Durham

Remodeling and Repair, Inc. (Durham), based on the Illinois Human Rights Act (Act), (775 ILCS 5/1-101 *et seq*. (West 2018)). Following a review, the Commission sustained the Department's dismissal of Crawford's charge. Crawford seeks direct administrative review of the Commission's decision.

¶ 3                                     I. BACKGROUND

¶ 4        On December 17, 2015, Isaiah Crawford, Sr. filed a charge of discrimination (775 ILCS 5/5-102(A) (West 2014)) and retaliation (775 ILCS 5/6-101(A) (West 2014)) against Durham with the Department. Crawford alleged Durham damaged Crawford's sewer pipe during the construction of a wheelchair ramp in November 2013 and then refused to acknowledge or provide timely repairs due to discriminatory practices aimed at Crawford.

¶ 5        Counts A-C alleged that on July 31, 2015, Durham subjected Crawford to discriminatory and unequal terms of service due to Crawford's physical disability of hemiparesis (count A), a knee injury (count B), and race (count C). Counts D-G alleged that on August 5, 2015, Durham retaliated against Crawford by stating that Durham "was not going to fix anything else and not pay the money owed for cleaning the sewer." Crawford alleged that Durham would not have denied the same service for non-disabled and/or non-black customers under similar circumstances.

¶ 6        The Department conducted a fact-finding conference attended by both parties. The record on appeal does not include a transcript of the fact-finding conference but the Department's summary of the testimony.

¶ 7        This summary indicates that Durham is a private company that performs construction work for individuals. Durham constructed a wheelchair accessible ramp at Crawford's home in November 2013. After the ramp's completion, Crawford's sewer pipe began backing up. A

2

licensed plumber inspected the sewer pipe and advised Crawford that a piece of rebar had been driven through the sewer pipe. Crawford contacted Durham on multiple occasions, without success, to request that Durham return to Crawford's residence to repair the sewer pipe. Eventually, Crawford sent a letter to Drake Daley of the Division of Planning and Development for the City of Rock Island (City) in January 2015. Crawford's letter informed Daley of the ongoing problem with the sewer pipe and requested Daley's assistance. Durham did not return to Crawford's home to remedy the damage to the sewer pipe until the summer of 2015.

¶ 8 According to Crawford, on July 31, 2015, Durham arrived at his residence, without prior notice. On that day, Crawford was awakened by the sound of Durham tearing out the wheelchair ramp. By the time Crawford was able to reach the door, Durham had already torn out the wrong section of the ramp. Crawford overheard the foreman on the job site tell another employee that "when they found the pipe if it was not clear through than he was going to pour concrete over it and cover it back up." The owner of Durham admitted to Crawford that one of Durham's workers drove the rebar into the ground with a sledgehammer and damaged the sewer pipe during the original construction. Crawford conceded that the employee unintentionally drove the rebar into the sewer pipe. Crawford told Durham that he wanted a licensed plumber to conduct the repairs.

¶ 9 On August 4, 2015, Durham returned, without a licensed plumber, to complete the repair to the sewer pipe. When Durham left Crawford's property, the property was cluttered with construction debris. In spite of Crawford's request, Durham refused to return.

¶ 10 According to Crawford, on August 26, 2015, Durham gave Crawford's wife a check for $350. This amount represented Crawford's expenses for a plumber to inspect the sewer pipe with a camera, which resulted in the discovery of the damaged sewer pipe.

¶ 11        On September 18, 2015, Durham returned to complete the repairs and clean up the job site. Crawford stated that he believed the repairs would have been completed much sooner but for Crawford's disabilities and race.

¶ 12        According to Durham's version of the events presented during the fact-finding conference, Durham received a copy of Crawford's January 2015 letter to Daley on February 10, 2015. Durham explained that repairs to the pipe were not possible in February and had to be postponed until the ground thawed.

¶ 13        According to Durham, Crawford was notified that Durham was coming to make the repairs a couple of days prior to July 31, 2015, but it rained. When Durham arrived at Crawford's home on July 31, 2015, a Durham employee knocked but no one came to the door. On August 4, 2015, Durham returned to Crawford's residence to repair the sewer pipe based on instructions from CJ Now Plumbing. When the sewer pipe repairs were complete, Durham covered up the pipe and left the residence. However, Crawford continued to make complaints to the City because the sewer pipe repairs were not completed by a licensed plumber and further complained that screws and dirt were left on the ground.

¶ 14        According to Durham, the company received an e-mail from Daley on September 15, 2015, authorizing Durham to return to Crawford's property to conduct additional cleanup. On September 18, 2015, Durham returned to the property with CJ Now Plumbing. Durham uncovered the pipe to have the repairs inspected by CJ Now Plumbing. The sewer pipe passed inspection. Durham claimed to have no knowledge of Crawford's disability and stated that Crawford's race had nothing to do with the timing of the repairs in 2015.

¶ 15        Following the investigation, the Department's investigator recommended that a finding of lack of substantial evidence be entered on counts A-F because "[Crawford] has not shown that he

4

was subject to different terms and conditions or denied service based on his disabilities of Hemiparesis and a knee injury or his race black as it is uncontested [Durham] completed the repair to the damaged sewer pipe and to the ramp as well." Regarding count G, the Department's investigator recommended a finding of lack of substantial evidence because the facts did not demonstrate Crawford's race or disability contributed to Durham's delay.

¶ 16        On January 20, 2017, the Department issued a notice of dismissal, dismissing all counts of Crawford's charge for lack of substantial evidence. The Department also notified Crawford that he could seek review of the Department's dismissal before the Commission by filing a request for review before April 25, 2017.

¶ 17        On April 24, 2017, the Commission received Crawford's request for review of the Department's dismissal. Crawford attached several documents to his request for review, including: the Department's notice of dismissal and investigative report, a December 2014 invoice from a plumber, pictures taken by the plumber, a September 2015 letter from the City notifying Durham that it may have completed work on a sewer lateral without obtaining a permit, a list of dates and names entitled "Drake Daley's Phone log notes for Crawford's Sewer Issue," and the original charge. Crawford's request for review included the following statement: "I think it would [be] good to have [Daley] at this fact finding conference. [Daley] seen for himself on September 17-18/2015 that the sewer pipe was not repaired on August 4, 2015."

¶ 18        On June 29, 2017, the Department responded to Crawford's request for review by the Commission. The Department requested the Commission to sustain the Department's dismissal of counts A-G for lack of substantial evidence. The Department's response reiterated portions of the Department's investigative report, argued that Crawford offered no more than speculation

5

concerning Durham's discriminatory motivation with regard to the repairs, and argued that Crawford failed to establish a *prima facie* case of discrimination or retaliation under the Act.

¶ 19 On June 27, 2019, the Commission issued an order sustaining the Department's dismissal of Crawford's charge for lack of substantial evidence. Regarding counts A-F, the Commission found that Crawford identified "no comparators, without his disabilities or of a different race, who were treated more favorably by Durham in a similar dispute over damage caused during construction." The Commission agreed that Crawford failed to establish a *prima facie* case of discrimination under section 5-102(a). Further, the Commission reasoned that even if Crawford had presented a *prima facie* case, there was no evidence presented to show that Durham's "sloppy construction work, or foot-dragging in the repairs, was linked to discrimination rather than incompetence or simply poor business practice." Regarding count G, retaliation, the Commission found that "even if [Crawford] had produced a *prima facie* case, he cannot rebut Durham's nondiscriminatory explanations for his actions."

¶ 20 Crawford seeks direct administrative review of the Commission's order pursuant to Supreme Court Rule 335(a) (eff. July 1, 2017).

¶ 21 II. ANALYSIS

¶ 22 In this review, Crawford argues that the Department's investigator should have called Daley to testify during the fact-finding conference. According to Crawford, if the Department had memorialized Daley's historical perspective, the end result would not have been a dismissal due to a lack of substantial evidence. In addition, Crawford complains that the Commission abused its discretion by sustaining the Department's dismissal of Crawford's charge due to lack of substantial evidence.

¶ 23    The Commission and the Department (collectively, State respondents) submit that the Commission did not abuse its discretion by sustaining the Department's dismissal of all counts. The State respondents claim that Crawford should have developed a better record regarding the Department's failure to call Daley as a witness during the fact-finding conference. In addition, the State respondents observe that Crawford did not challenge the dismissal of counts C and F when before the Commission. Consequently, the State respondents submit Crawford has now forfeited the issue related to Daley's failure to testify and any other contentions of error pertaining to counts C and F as well.

¶ 24    It is well established that forfeiture is a limitation on the parties but not the court. *Sharbono v. Hilborn*, 2014 IL App (3d) 120597, ¶ 28. Here, the dismissal of all counts of Crawford's charge is a drastic outcome that this court desires to examine carefully. Therefore, while forfeiture may apply, we excuse forfeiture due to the importance of identifying and deterring unlawful discriminatory practices.

¶ 25    The Act protects a person, such as Crawford, from unlawful discrimination on the basis of race, color, religion, sex, national origin, ancestry, age, physical or mental disability, among other things. 775 ILCS 5/1-102 (West 2014). Procedurally, a charge results in an investigative report by the Department to the Department director. 775 ILCS 5/7A-102(D)(1) (West 2016). "If the Director determines that there is no substantial evidence, the charge shall be dismissed." 775 ILCS 5/7A-102(D)(3) (West 2016). If the complainant disagrees with the Department's decision, then the complainant may choose to have the Commission review the Department's dismissal order. *Id*. This is the posture of this appeal. Crawford appealed to the Commission and now takes issue with the Commission's decision. The Commission's decision is subject to direct

administrative review by this court. *Deen v. Lustig*, 337 Ill. App. 3d 294, 302 (2003); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33.

¶ 26        According to statute, this court is required to review the Commission's conclusions, which are based, in part, on the record that was developed in the fact-finding process by the Department. 775 ILCS 5/8-111(B)(1) (West 2016); 775 ILCS 5/8-103(B) (West 2016). The Commission's decision cannot be set aside unless we are persuaded that the Commission's decision resulted from an abuse of discretion. *Young*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, an abuse of discretion does not exist unless we determine the Commission's decision was arbitrary and capricious. *Id*. ¶ 33; *See ManorCare Health Services, LLC v. Illinois Health Facilities and Services Review Board*, 2016 IL App (2d) 151214, ¶ 21.

¶ 27        Counts A-F of Crawford's charge in this case allege that Durham denied Crawford full and equal enjoyment of Durham's facilities and services in violation of the Act. 775 ILCS 5/5-102(A) (West 2014). To establish a *prima facie* case of such discrimination, based on either race or status as a disabled person, the record must establish (1) that Crawford falls within a protected class; (2) that Crawford was denied full and equal enjoyment of the services; and (3) that others not within the protected class were given full enjoyment of Durham's services. *In the Matter of: Velma J. Henderson v. Steak N Shake, Inc.*, Ill. Human Rights Comm'n, No. 1996CP2939.

¶ 28        Durham asserted during the fact-finding conference that it was not aware of Crawford's disability. We conclude this assertion is disingenuous since the construction project involved the construction of a wheelchair ramp for Crawford. In addition, we presume the issue of Crawford's race is similarly obvious.

¶ 29        Further, Crawford complained about damage Durham caused that impacted the sewage evacuation from Crawford's home. Hence, the nature of this complaint warranted a much

8

swifter, if not immediate, response due to sanitation and health concerns. Instead, Durham ignored Crawford for months.

¶ 30　　Turning to the third element, in order to state a *prima facie* case, Crawford had to point out instances where Durham's other clients, that were not within the same protected class or classes as Crawford, received better treatment and more responsive customer service from Durham. The record does not contain any comparative information about whether Durham provided the same substandard customer service to other clients who were not members of a protected class. Without such information, the Commission had no factual basis to support a finding that Crawford's disability or race played any role in Durham's ongoing poor customer service. As a result, without this evidence set forth in the record, we conclude that the Commission's order sustaining the Department's dismissal of counts A-F was not arbitrary and capricious and did not constitute an abuse of discretion.

¶ 31　　Next, we consider the propriety of the dismissal of count G, alleging retaliation pursuant to section 6-101(A) of the Act. 775 ILCS 5/6-101(A) (West 2014). This charge requires proof (1) that Crawford was engaged in a protected activity, (2) that Durham took an adverse action against Crawford, and (3) that there was a causal nexus between Crawford's protected activity and Durham's adverse action. *Welch v. Hoeh*, 314 Ill. App. 3d 1027, 1035 (2000). In this case, Crawford claims Durham's adverse action was conduct designed to deliberately delay the required repairs to his damaged sewer pipe after Crawford complained about Durham to the City.

¶ 32　　In this case, the Commission did not directly address whether Crawford was engaged in a protected activity or whether Durham took an adverse action against Crawford. Briefly, a protected activity includes opposing "that which he or she reasonably and in good faith believes to be unlawful discrimination *** because he or she has made a charge, filed a complaint,

9

testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act." 775 ILCS 5/6-101(A) (West 2014). For purposes of this appeal, we presume a pattern of ignoring Crawford's complaints constitutes an adverse action.

¶ 33       The only remaining issue for our discussion is whether Crawford's persistent complaints to the City resulted in, or had a nexus to, Durham's prolonged and ongoing refusal to rectify the damages Durham caused to the sewer pipe during the construction of a wheelchair ramp.

¶ 34       Durham claimed the delay resulted from conditions beyond Durham's control, such as frozen ground and spring rains. Neither reason explains the extensive delay in this record which resulted in repairs beginning in July 2015. The delay was unwarranted.

¶ 35       However, the unwarranted delay is not actionable unless Crawford provided some proof that Durham was punishing Crawford for lodging complaints about Durham's construction services to the City, including Crawford's complaints about discriminatory practices by Durham. The record includes Crawford's recollection of Durham's statement that he would never pay for Crawford's expenses related to the diagnostic plumbing inspection. In addition, Crawford overheard a conversation between construction workers that expressed animus about being required to tear out the wheelchair ramp to fix a sewer pipe problem the worker did not believe Durham caused. These statements were rude and unnecessary. Yet, the sewer pipe was not maliciously filled with cement as threatened by the worker on site. Moreover, Durham eventually reimbursed Crawford for some expenses related to the sewer pipe issue.

¶ 36       As noted, the damage caused by Durham could have and should have been rectified by Durham much sooner. However, the record does not establish Durham deliberately delayed the sewer pipe repairs as retaliation for Crawford's complaints to the City. Durham's responses to

10

Crawford's requests were consistently sluggish both before and after Crawford's decision to request help from the City.

¶ 37    For these reasons, we conclude the Commission did not abuse its discretion when it sustained the Department's dismissal of Crawford's charge for lack of substantial evidence.

¶ 38                                    III. CONCLUSION

¶ 39    The decision of the Illinois Human Rights Commission is affirmed.

¶ 40    Affirmed.